The H., E. & W. T. R'y Co. v. John Trentem.

(Case No. 2036.)

1.  CONTRACT — SPECIFICATIONS — PRESUMPTION.— When a contract for the performance of work refers to specifications made a part of the contract, and requires the work to be done under the supervision of an engineer, and the record, while containing the contract, is silent as to the specifications, it will be presumed that the specifications were furnished by the engineer when the work began, or at least after the contract was made, and this would involve his right to change them from time to time, when the contract required the work to be done in accordance with any changes that might be made.

2.  SAME — EXTRA WORK.— See opinion for facts relating to a contract for the construction of culverts for a railway company under the supervision of an engineer, under which it was held that a claim for extra work was properly disallowed.

3.  SAME.— One for whom extra work is done, not contemplated by the contract, but which is done under the supervision of an engineer placed there by the employer to direct and supervise the work to be performed under the contract, must, when the work is received by the employer, pay for it according to its value, the engineer having made the original contract, and no limitation on his power to contract being shown.

APPEAL from Harris.    Tried below before the Hon. James Masterson.

This suit was brought by Trentem upon a contract made between him and appellant, through C. G. Woolridge, chief engineer, for the construction of seven or more rock culverts on the line of the road of appellant, according to plans and specifications, at the stipulated price of $10 per cubic yard.    The contract was signed by appellant, by C. G. Woolridge, chief engineer, and by appellee.

Seven culverts were constructed and completed as alleged in the original and supplemental petitions, the whole work done amounting to one thousand and thirty-eight and one-third cubic yards, as alleged in the pleadings.

There was a change in and deviation from the plans and contract, in lengthening some of the culverts and deepening the foundations of others, which was done under the orders and directions of the engineer, which necessitated additional and extra work, over and above the quantity contemplated by the contract, amounting to one hundred and twenty-two and twenty one-hundredths cubic yards. The work called for by the plans, it was shown, amounted in measurement to about nine hundred and eleven cubic yards; the one hundred and twenty-two and twenty one-hundredths of extra work done, added to this, makes the total of one thousand and thirty-three and two-tenths yards claimed. In addition to this, plaintiff claimed and sued for $151.20 for other work done for appellant, not connected with the contract for building the culverts.

The original petition declared upon the contract and upon a *quantum meruit* for the value of the whole of said work, and alleged the work upon the culverts completed to be of the reasonable value of $10,383.33.

The appellant answered by general denial, admitted the contract, and alleged that the work done amounted to only six hundred and forty-five and ninety one-hundredths cubic yards; pleaded payment to appellee and to his employees, and goods furnished, etc., in excess of the value of the work done, and in reconvention for the sum of $866.50.

Appellee filed his first supplemental petition under oath, adopting and reiterating the allegations of his original petition, and alleging and charging that the measurement of the culverts, as alleged by appellant, was erroneous, unjust and fraudulent, and that there were errors and overcharges upon goods alleged to be sold and money paid, amounting to $263.51, and that the appellant had failed to estimate and give him credit for the extra work not connected with the culverts, and claiming the balance of indebtedness, as claimed in the original petition, of $4,390.79, etc.

Appellant filed his amended answer in reply, pleading additional payments made and offsets of $877.51 in reconvention, filing an alleged detailed measurement of the culverts.

Appellee filed his replication and supplemental petition, denying generally the supplemental answer of appellant, and reiterating the allegations of his preceding pleadings, denying the correctness of

plaintiff's measurement as alleged, and alleging specifically the extra work done on the culverts; that he was required to do the same by Woolridge, the engineer and agent of appellant, who changed the plans for the same after the contract was executed; that the plans were unskilfully prepared by said engineer, and denying that any of the work was unskilfully executed; alleging overcharges claimed by appellant of $242.10, in addition to those before alleged; adopting all of the allegations of his preceding original and supplemental petitions, and claiming a balance of $4,532.82, with interest from January 1, 1882.

There was a verdict for appellee for $4,453.92 principal, and $811.76 interest, making a total of $5,265.68. To this appellant, upon a motion for new trial, entered a *remittitur* of $1,867.40, leaving the judgment to stand for $3,398.28.

*E. P. Turner*, for appellant.

*Wm. H. Crank* and *Wm. P. Hamblen*, for appellee.

Stayton, Associate Justice.— The first clause of the contract which is made the basis of this suit expresses fully what the appellee agreed to do, and is as follows:

" The second party hereby agrees and binds himself to the first party to do the following work:

" To construct seven rock culverts, more or less, as directed by the engineer, in accordance with the plans and specifications thereto attached, and forming a part and parcel of this contract, and to furnish all material, lime, cement, rock centers, and lay all foundations, and all and everything required for the full completion of said work, and ready for the acceptance of the engineer of the Houston, East & West Texas Railway Company at the following price, to wit: Ten (10) dollars per cubic yard."

It will be observed that this contemplates the doing of all stone work necessary to complete seven culverts, more or less, and the compensation therefor provided is $10 for each cubic yard of stone work embraced in the culverts contemplated.

We find in the record as part of the contract, and designated "Specifications," eight several articles, but no one of these can justly be so considered.

The first simply provides that the work shall be done under the supervision of the company's engineer, or his assistants.

The second provides who may receipt for payments made on the work, and receive orders.

The third provides that the work shall not be sublet, unless with the consent of the engineer, and that money will not be paid to a subcontractor without authority from his contractor.

The fourth provides that the work shall be so promptly done as not to retard or interfere with other contracts or work on the railway.

The fifth contains the following language: "The quantities of the various kinds of work contracted for is declared and recognized to be only approximate;" and then declares that the work shall be at the risk of the contractor until accepted by the company, and that in case of advances made on work done or material delivered, the same should be the property of the company. The sixth is: "The second party shall conform to all line, time or other stakes placed to denote the work to be done, and all plans and directions of the engineer, and any departure from or refusal to comply with his instructions, made in accordance with this contract, shall be considered a violation of the contract, and the engineer shall have full power to remove, or cause to be removed, at second party's expense, any work which may be performed in a manner contrary to those specifications, which shall not have been approved of during the construction, or may have the work properly done at the expense of the second party."

The seventh declares that a failure to disapprove of bad work or material at time of monthly estimates provided for should not be construed as an acceptance.

The eighth was as follows: "No claim for extra work or for work not provided for in the contract will be made or allowed unless a written order to perform such work shall be given by the engineer, and in case of extra work so performed the engineer shall determine its value."

None of these articles contain a particular description of the structures to be erected or of any of their parts.

In the law of contracts, the word "specification," denotes a statement of the details of the thing to be constructed, referred to or made part of the more general parts of building contracts. Following the parts of the contract referred to is found what is called "Masonry Specifications;" these contain particular directions as to how the work shall be done; but do not give the dimensions of any one of the culverts, nor declare whether the foundations shall be the surface of the earth, or masonry below the surface. Some of the witnesses speak of "plans," but none are found in the record as a part of the written contract or otherwise, and in this state of the

record, which purports to give the entire written contract, the presumption is that these were made by the engineer when the work began, or at least after the contract was made; if so, they might be changed by him from time to time if he deemed proper; for the same power which would authorize him to give a plan or plans to construct by, not contained in the written contract, would authorize him to change such plans whenever in his judgment it became necessary to do so, and with those changes the sixth article referred to required the appellee to comply.

The evidence is conflicting as to the number of cubic yards in all the culverts as constructed, but the preponderance of the evidence probably tends to show that this is as claimed by appellee. It appears that, in constructing the culverts, the engineer directed the foundations of three of them to be placed further under the surface of the ground than was at first intended, and that it became necessary, under the direction of the engineer, to make one of the culverts longer than was at first contemplated, and that to do these things it required one hundred and twenty-two cubic yards of stone work more than would otherwise have been necessary.

The parties, in the pleadings and at the trial, seem to have treated this as extra work; and it is claimed that the appellee was not entitled to recover therefor, unless he showed that it was done under a written order from the engineer.

It is also urged that the court erred in the charges given, which were as follows:

"By a clause in the contract sued on, it is provided that no extra work, etc., shall be done or charged for, save when the engineer, in writing, ordered same; therefore as to such extra work, etc., if any, you will disallow, unless the proof satisfy you that with the knowledge and by the order and authority of defendant company or its engineer in charge, such extra work was done; in that case you may allow for so much extra work, etc., according to the stipulations of the contract sued on as to prices so far as the work can be traced. But, if extra work is done, not provided for in such contract, and to which provisions as to prices cannot be applied, the contractor to do the work may recover therefor for so much as same reasonably was worth. A deviation by consent may be treated as a new contract, so far as the deviation is concerned, and a modification in that respect where the circumstances required it. It is a question of fact for you to determine from the evidence, whether or not any extra work, etc., was done under the order and direction of the defendant's engineer in charge. Merely not objecting to its being done

will not entitle plaintiff to recover, nor would the acceptance of said work, etc., by the engineer of the company entitle plaintiff to compensation therefor. But plaintiff must establish to your satisfaction that such extra work was ordered by the engineer in charge, and that ordering such extra work was within the scope of his authority."

The court also gave the following charge:

"No work is extra work that is called for by reasonable construction of the contract, to be done as a part of the work on culverts to be constructed. You will not, therefore, allow plaintiff for any extra work, except such work as was outside of and independent of the contract between the parties, and that would not have been required under the contract."

We are of the opinion, in the absence of something in the contract more clearly defining and describing the culverts to be built, that no work shown to have been done in their construction under the direction of the engineer of the company can be considered as extra work within the meaning of the entire contract. No part of the contract prescribes how deep the foundations should be laid, how wide, how high, or how long any one of the culverts should be.

The fifth and sixth articles of that part of the contract termed "Specifications" indicate that these matters were left to the discretion of the company's engineer, whose directions the appellee was bound to comply with.

The "Masonry Specifications" did contain somewhat minute directions as to the dressing of the stone, beds, joints, courses, mortar joints, cement, pointing and paving, and in some places the size of the stones to be used was specified.

If in reference to some of these matters so specifically described the appellee had not conformed to the contract, but had done the work in some other better or more expensive manner than provided by the contract, and therefore claimed extra compensation, then the eighth article would have been applicable, and it would become necessary to inquire how far, under all the facts of the case, the company might be liable, notwithstanding written directions may not have been given by the engineer to the contractor to do the work in a different manner.

The last charge referred to, we are of the opinion, gave the law of the case to the jury clearly in reference to the work done on the culverts, and the contract fixed its value.

All the charges must be considered together, and under the facts of the case the first charges given could not have operated to the prejudice of the appellant

The jury having been instructed what would constitute "extra work," the charge left it for them to determine whether such work had been done, and gave a correct rule for the determination of the value of such work in the absence of an estimate of its value made by the company's engineer.

The evidence shows that the appellee did some work, under the direction of the engineer, which had no connection with the culverts, and as to this work there was allegation and proof as to value.

The engineer made the contract in question, and it seems had authority to contract for work to be done on the road.

This being true, the work not connected with the building of the culverts having been done under his directions, and having been received by the appellant, we see no reason to hold that the company is not liable for its value.

Such work was not "extra work" within the meaning of the contract; nor does it appear that the parties made the written contract in view of other work than such as was connected with its subject-matter; hence, the limitation on the liability of the company, therein contained, in no manner affects the right of the appellee to recover the value of work done not in connection with the culverts.

It is not shown that the power of the engineer to make contracts was limited to such contracts as he should make in writing, and, in the absence of such proof, his power must be presumed to have been co-extensive with the proper conduct of the business confided to him.

What has been said renders the further consideration of the fifth and sixth assignments unnecessary.

The seventh assignment is: "The verdict of the jury is contrary to and not supported by the evidence." This assignment is so general that it cannot be considered. Rules 24-26.

The eighth is: "The verdict is contrary to the evidence, especially in this: The evidence shows that whatever claim there is for extra work, if any was done, was on verbal, and not on written, orders, and the record does not show any evidence of the value of any work claimed as extra work." This assignment has been already considered in what has been said under the assignments based on the charges given.

As before said, the work spoken of as extra work was not shown to be of that character, but was a part of the work contemplated by the written contract, which declared that it should be paid for at the rate of $10 for every cubic yard; hence no proof as to the

value of that work was necessary, other than such as was necessary to show the number of cubic yards of stone work in the culverts. In reference to this matter, as before said, the evidence was conflicting.

The ninth assignment is: "The court erred in overruling the motion for a new trial, for the reasons therein set out, which motion is made a part hereof."

When we look to the motion for new trial we find that it was asked upon ten grounds.

Under the well settled rules of this court, this assignment must be considered too general to require a revision of the action of the court below in overruling the motion for a new trial, based on so many grounds. In view, however, of the suggestion of delay made by appellee, we have looked into the matters which were made the grounds for a new trial, and it does not clearly appear that the court below committed any material error — a proper *remittitur* having been entered — for which the judgment ought to be reversed, and it is affirmed, but without damages.

AFFIRMED.

[Opinion delivered March 3, 1885.]